Case number 21-2845, Stephen Kares v. Bryan Morrison. Arguments not to exceed 15 minutes per side. Mr. Bernecker, you may proceed for the appellant. Good morning, Your Honors. Good morning. May it please the Court. Brendan Bernecker on behalf of the appellant, Mr. Stephen Kares. With the Court's leave, I'd like to reserve three minutes for rebuttal. Fine. Thank you. There are a lot of moving parts in this case, and so I want to start with two points that are undisputed. First, it's undisputed that my client, Mr. Kares, was unconstitutionally sentenced in violation of the rule announced in Alain. The sentence he's currently serving is longer than that which could have been imposed based only on the jury's verdict. And the respondent has not denied the sentence is unconstitutional. Instead, respondents argue that the federal courts are powerless to grant relief from this unconstitutional sentence because, in respondents' view, Mr. Kares' 2254 petition was untimely, and he procedurally defaulted his Alain claim. Those are the undisputed points, and they frame the three questions on which Mr. Kares and respondent disagree. Whether his application for a new trial in DNA testing under MCL-770-16 was properly filed, whether that application was for collateral review, and whether Mr. Kares procedurally defaulted his Alain claim. First, Mr. Kares' MCL-770-16 petition was properly filed. We do not dispute that that application failed to comply with certain mandatory state law rules of procedure, and that those barred review of the merits. But in our twos, the Supreme Court unanimously said that failure to comply with mandatory state law procedural conditions that bar review of the merits does not prevent an application from being considered properly filed. So what makes something properly filed, then? So, Your Honor, it has to comply with those state law conditions which relate to form, delivery, and acceptance. And so what our twos tells us is that filing has to do with whether it was properly delivered to, and received by, and accepted by the clerk for filing, and that that includes whether it was in the proper form. So any condition that relates to those three categories is a filing condition, and failure to comply prevents something from being properly filed. But other mandatory state law procedural conditions that bar review of the merits are not filing conditions as a matter of federal law. So, moving on to the collateral review question. Mr. Karas filed a motion asking for a new trial, and he did that through a procedure in which a new trial was in fact available to somebody who satisfied the conditions for obtaining relief. We submit that where someone asks for a new trial, and a new trial is in fact available, that's sufficient to ask to be an application for collateral review, given that a new trial is the quintessential form of collateral review. The third question is whether Mr. Karas has inexcusably procedurally defaulted his Allain claim. He has not. First, he hasn't procedurally defaulted the Allain claim. He raised a version of it in his Rule 6.500 motion in the Michigan trial court, and then a clearer version citing Allain itself in both his motion for leave to the Michigan Court of Appeals, and his application for leave to the Michigan Supreme Court. But even if the court believes that he did procedurally default that application, that doesn't end the inquiry. There's also the further question of whether any procedural default that may have occurred must be excused under this court's decision in Chase v. McCauley, where the court looked at a very similar situation, also in Michigan, also concerning an Allain claim, where the appellant's counsel had failed to raise Allain after it was decided while the direct appeal was pending. And this court held in Chase that counsel who failed to raise Allain after it was decided was unconstitutionally ineffective. And that case is, on all fours with Mr. Karas, is with one exception, which is that in that case the Michigan Court of Appeals had already decided that Allain did not apply to Michigan's sentencing system, and so the counsel in Chase's case arguably could have relied on that binding Michigan Court of Appeals precedent. Whereas in Mr. Karas' case, that decision hadn't come down yet, and so his lawyer didn't have the excuse that the lawyer in Chase had, because there was no precedent saying that Allain didn't apply in Michigan. And, in fact, this court held in Robinson that Allain clearly established the law when it was decided. And so for the same reasons as counsel in Chase was ineffective, so too was appellate counsel in Mr. Karas' case. And so pulling it all together, his MCL-770-16 application was properly filed because it complied with the conditions on form delivery or acceptance. It was for collateral review because it asked for a new trial through a procedure in which a new trial was, in fact, available to someone who satisfied the conditions on obtaining relief. And he has not procedurally defaulted his Allain claim, or, if he has, that default needs to be excused under Chase. So what's the best case that you would cite for saying that this kind of a motion for a new trial based on this DNA is collateral review? So it's hard to identify a specific case. I would say probably Hudson, the case in the Fifth Circuit. So in that case, it concerned Texas' DNA testing procedure. And there, there was some dispute in the Fifth Circuit about whether Texas' procedure actually made any sort of collateral review available. And the Fifth Circuit said, well, if the court believes that the DNA is favorable to the applicant, then the court can consider granting bail pending other proceedings concerning the validity of the conviction or pending executive clemency. And the Fifth Circuit said that is enough. They're going to look and say, is it reasonably probable that the person would not have been convicted had this DNA testing already been done? And if it is, they can grant bail. And the Fifth Circuit held that that was sufficient collateral review. A respondent submits that Hudson is no longer good law. And we sent a 28-J letter last week where about two weeks ago, the Fifth Circuit cited Hudson and reversed a district court saying that it was clear error not to follow Hudson. So we submit that it's still good law as of at least two weeks ago. But along the same lines, none of the circuits that have come out the other way have concerned an application where there was any collateral review available. So the Seventh Circuit in Pierce, the Eleventh Circuit in Brown, in both of those cases, it was a motion for DNA testing. And the result was that if you were successful, you got something saying the DNA testing has been done and it exonerates you. Go forth and use this in collateral review as you see fit. And those courts said, well, there's no hearing here. There's no inquiry into how this fits with the conviction. And so we don't have to review, and therefore it's not an application for collateral review.  We just think that they're inapposite here where there was collateral review available. There's a recent Supreme Court case, Reed v. Gertz, which talks about the statute of limitations in DNA testing cases in the 1983 context. How does that case apply, if at all, here? Yes, Your Honor. So Respondent has argued that under PACE, the appropriate thing for someone to do when they're not sure how much time they have to file a 2254 petition is to file protectively and say, I've got this state court application pending. I don't know if it was properly filed. I don't know if it's for collateral review. Please stay and obey and wait for the state court proceedings to wrap up. And just last week, the Supreme Court in Reed said that's senseless duplication. That was the words that they used. They said that concerns of comity and federalism and judicial efficiency counsel in favor of filing these protective applications. And so we think that the argument that those federalism, comity, and efficiency concerns apply any less in this context based on reading into PACE is inconsistent with the court's recent statements about the policy issues in this case. We also don't think we have to reach the policy issues because we think the statutory language here, all it requires is that it be properly filed and for collateral review, and both of those things are satisfied here. There's no requirement that the application have merit. In fact, the application at issue in Artoos itself, every claim was procedurally defaulted, and the Supreme Court said, no, you're jumping ahead to the merits. Whether something is properly filed has to do with its delivery and acceptance. Even a frivolous application can toll AEDPA's limitations period. Is there an issue here that we granted to COA only on the timing matter and not on the underlying Allene issue? So that is an issue in this case. As far as what the consequences of it are, I think we disagree with the respondent. Respondent seems to think that it's a jurisdictional issue. The Supreme Court held in 2012 in a case called Gonzalez against Thaler that this is not jurisdictional as long as there's a COA, whether it specifies the correct constitutional violation or the correct issues for appeal is not a jurisdictional question. And so we think that the jurisdictional concerns there are contradicted by Gonzalez. But there is an issue that the issue hasn't been certified. Mr. Karas did move for that pro se, I believe about two years ago, and it's been pending for a while. So we have not denied or granted a COA, and you're saying that this panel could grant a COA on that topic? Yes. A COA is a one-judge motion, so any judge of the panel, if they believe that the issue is debatable, could grant a COA on that topic. And we think that beyond being debatable, we think there are three totally legally independently sufficient reasons for reversing the decision below, each of which provides a sufficient basis for doing so. So your brief did address the merits of the Alene issue, but I don't recall that the state did. What should we do about that? Yes, that's correct, Your Honor. So the court in its briefing letter indicated that it would consider all of the issues decided by the court below. We took that and interpreted it to mean that we should brief both of the issues in this case, timeliness and procedural default. And so we did use about half of our opening brief or the argument section of our opening brief on that. Respondent elected not to brief it and said that the court didn't have jurisdiction to consider the issue. We think that's wrong under Gonzalez. We also, this court, we cite some cases in our brief where it has both briefs, the opening and the reply brief, where the court has decided whether to grant a COA at the same time it's decided the merits. We think that's the appropriate course here. If the court would like to grant supplemental briefing and hear from respondent on this, we think we have the better of the arguments and we're happy to make them in writing, but we also think that they've had a chance to brief it, they elected not to, and while the issues aren't waived and the court should still consider whether we're right, it doesn't have to give the court, it doesn't have to give the respondent another chance to make its arguments. And the respondent has not contested in this court the merits of the Elaine issue. So what it says in its brief is that it doesn't, the court doesn't have jurisdiction to consider the issue and so it's not going to brief it. There might be some sort of summary language that they think it was rightly decided. I don't recall exactly what they said, but they haven't substantively disputed that the procedural default arguments we raised had merit. Unless there are any further questions, there's a lot more I could say about the case, but it's probably better raised after my friend on the other side has had a chance. So I'd like to reserve the balance of my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the court, Linus Banghart Lynn, Assistant Solicitor General for the State of Michigan, on behalf of the respondent warden, and respectfully requesting that this court affirm the decision below. Your Honors, as we see it, there are really three avenues by which this court can affirm. The first, and what I think we've described in our brief, is probably the simplest is to agree with the district court that this 770.16 motion was not properly filed. It did not allege the things that needed to be alleged. We rely on Williams v. Burkitt. We rely on Pace. The second would be to hold that as a matter of law, a 770.16 motion is a discovery motion to get information, not a motion for a new trial, even though it has those words in it, and therefore is not a collateral state court review motion under 2244's language. The third is that, as the petitioner has pointed out in the reply brief and conceded, that any opinion you would issue on the 770.16 question and the properly filed question would be merely advisory because this court is not going to address the procedural default question. And I think I'm going to turn to that point first, which is that under NRAI certificates of appealability, we know that a notice of appeal when a partial COA has been granted by the district court, that constitutes a request to expand the COA. There was also an explicit motion made to expand the COA. This court issued a briefing letter without ruling on those. So we, as a party, we rely on this court and the district court and the COAs that issue to let us know what issues. Right, but can't this panel, given that we haven't had a panel ruling on expanding the COA, can't this panel decide to expand the COA and address the Elaine issue? I think when you ask can't, I think that's a tough question for an advocate because I recognize sort of the authority this court has to do things. I don't think it would be appropriate to do so. So I guess I would say, strictly speaking, yes, you can, and I've seen panels of this court do that in the past. But why not? If, in fact, the Elaine issue is so clear that this sentence violated the Supreme Court's ruling, which we have said applies retroactively, why shouldn't we grant a COA now on that? Because the procedural default issue is equally clear, and it's clear in our favor. And we prevailed on the procedural default issue in the district court, and the district court did not believe it merited a COA. I would also say that when this court issues a briefing letter, I would treat it. But aren't you really getting then to the question, is there a procedural default or not, not whether we should grant a COA on the merits? Well, I think you have to grant a COA on the procedural default question if you're going to reverse. You have to reverse both on timeliness and reverse on procedural default. And so it's really the procedural default question, the ineffective assistance question, as opposed to the Elaine question that's at issue here. So why don't you explain why you think you're so strong on the procedural default issue, that even if the Elaine issue is totally meritorious, the petitioner should lose? Well, I think that the key point is the distinction between Chase v. McCauley that the district court pointed out, which was the timing. I think this court has to look at the development of sentencing law, federal and Michigan sentencing law, in 2013 and 2014. And my friend distinguished them and said, well, the council in this case didn't have the excuse of People v. Herron, right? People v. Herron was the published panel decision in Michigan that said that Elaine does not apply. That was a published court of appeals decision. It was reasonable in 2013 and in early 2014, I think, for lawyers and judges in Michigan to think that Elaine does not apply to Michigan's system. And plenty of judges and lawyers did think that. But the problem with the framing is, in an ineffective assistance claim, when we don't start with a presumption that counsel was incompetent and then give them an excuse, as he put it, for their incompetence, we start with a strong presumption that counsel is competent. That's Strickland's words. Indulge every presumption that counsel is competent. So not only was this case, was this lawyer working without People v. Herron, he was also working without People v. Lockridge, the Michigan court of appeals Lockridge decision, which criticized Herron. And that is something that this court pointed out in Chase v. McCauley and it kind of listed, I think, six or eight other cases that were around the same time as Herron and around the same time as Chase where it was briefed after the panel decision in Lockridge. This attorney did not have the benefit of the panel decision in Lockridge, the court of appeals decision. Also not the benefit of Herron. All they had was Elaine. And if you look at Elaine, the sentencing scheme described in Elaine bears no resemblance to Michigan's sentencing scheme. It really did take some development for the court to ultimately decide that that does apply here. Do you agree that Elaine applies? If we got over the idea of procedural default, do you agree that Elaine would provide Karras with relief? Yes. We're not relitigating Robinson. That ship has sailed. I would say yes, but with an asterisk, which is that not in the way that my friend has described here. We do not agree that he received a harsher sentence than he would have otherwise received. And you have to look at the Lockridge holding to understand why that is. Do you agree that the trial judge did find facts that violate what Elaine says can be done? Yes. So if it were not for procedural default, if we got to the merits, you would agree that Karras should be resentenced. And he could get a sentence that would be exactly the same or not, but it would be a jury would have to find this. Well, I hope Your Honor thinks that I am not splitting hairs here, but resentencing would not be the appropriate remedy. What would be the appropriate remedy? What we sometimes refer to as a Crosby remand after the Second Circuit's procedure following Booker, which is basically an inquiry to the court, the trial judge, to say, if you had sentenced Mr. Karras under advisory guidelines instead of mandatory guidelines, would you have imposed a different sentence? That is the remedy that hundreds of Michigan defendants got after Lockridge through the state court. And this court has held that that is a constitutionally adequate remedy. So on habeas, some courts have ordered Crosby remands in sort of accordance with Michigan law, or I guess I should say allowed Michigan courts to hold Crosby remands in accordance with Michigan law. Other courts have said resentencing. So on habeas, a district court can kind of go either way on that, but the better remedy is the one that is consistent with Michigan law and consistent with what hundreds of Michigan defendants have gotten. Again, I apologize. I'm not as prepared to answer these questions because they weren't in the Certificate of the Appeal Abilities. Right, but I'm just trying to figure out why is the state so objecting to this if there is a clear Elaine error? And I understand that you've got the different points you want to make, but I just wanted to clarify that in my own mind. I mean, we have an interest in sort of the finality of our judgments, and we have an interest in protecting those judgments. And I think that when you have – and Congress has given us these sort of procedural defenses, and I believe we're entitled to use them. And I think that to sort of give it up in this case where we say, well, it doesn't matter, let's just give him a Crosby remand, he'll get the exact same – he won't be resentenced probably. He may even receive a harsher sentence. Sometimes defendants get that on a Crosby remand or on a resentencing. But the point is that we have 770.16. We have 2244D. We have the statute of limitations. We have the procedural default defenses. And Congress and the courts have decided that defendants have to preserve their claims and present their claims. But what was happening here, and correct me where I'm wrong, but he has the one year under AEDPA to file the habeas petition, and a certain amount of days had gone by. And then he files this 770.16 petition, motion, whatever it's called. And that – the question before us is does that toll the running of the statute of limitations? But he did file within the requisite remaining number of days after that decision was made on the 770.16. Well, not after. It was while that appeal was pending. So he – So – During, yes. During. Okay, so that's even better for him that he did file it during that period. Yes. Somehow realizing, oh, my gosh, time is flying. So then the question really is why shouldn't the filing of the 770.16 toll the statute of the limitations, and especially given this new Supreme Court case? Yeah, I'd be glad to start with Reid because it's completely an opposite to this case. Because Reid was a section 1983, and I'm not relying on sort of a technical distinction between 1983 and 2254. The point here is that in Reid the decision that was being challenged was the state court's denial of the motion for DNA testing. And we would concede that if a 2254 petition were filed that was challenging that decision by the Michigan court, obviously that claim wouldn't accrue until the Michigan court had decided that claim. Now, there would be other problems with that 2254 petition, but we wouldn't be raising timeliness, right? He's challenging a conviction from much, much earlier, and he's trying to use this DNA motion as tolling. So for Reid to say that a claim accrues when it accrues, and also the point of Reid is that the appellate process is part of that, which we've always conceded. If the appellate process weren't part of it, he would lose either way because the 770.16 motion was only pending in the trial court for a week. So he needs that tolling in the appellate system in the Michigan appellate courts, and we've never contested that if he gets tolling, which we don't agree he does, but if he gets tolling, he gets that appellate tolling as well. So Reid doesn't have anything to say here. It just basically says that whenever the clock starts, it starts when all of the state court process is complete, including appeals. And we agree with that. So your opponent had two other things that we haven't talked about. One is whether it was properly filed, and the other is whether it was a collateral attack, if you want to address those. Yeah, absolutely. So we rely on Williams v. Burkett and on Pace regarding properly filed. 770.16 lists very clearly sort of what you need to establish, and it is not just the fact that Mr. Koress couldn't establish these things. It's that he didn't even bother to allege them. Essentially, if we allow this to be considered properly filed, it almost feels like every piece of paper that a defendant can put in the hand of a clerk that says, please, new trial, that will be considered properly. I mean, my friend said when a defendant has asked for a new trial and a new trial might be available, then that counts as properly filed. And that just can't be true. It has to actually allege the things that need to be alleged. And we know from Williams a 6.502 motion that's denied because it doesn't meet one of the exceptions for a second or successive motion. Those are substantive requirements, right? Retroactive change in law or new evidence that wasn't available before are the exceptions. And yet, if it doesn't allege those, it's not properly filed under the law of this circuit. So I think that this is really indistinguishable from Williams. I think it compels the result. If you don't allege that there was inconclusive testing in your case, which Koress didn't allege and couldn't allege because it isn't true the testing in his case was conclusive that he was the perpetrator, if you don't allege that identity was an issue in the case, which he couldn't allege because identity wasn't an issue in his case, then you're out of luck. And so basically, that's why it took the trial court a week to decide this motion. Right? Because it just facially didn't allege what it needed to be alleged. It said 770.16. It said new trial. It said Stephen Karas. But other than that, it... Why do those go to the... whether it meets the facial requirements as opposed to the merits? Well, because if you allege, right, if you can allege in good faith, well, I think the testing in my case was inconclusive, and then the prosecutor says, well, we think it was conclusive or we agree it was inconclusive, but we don't think... Right? Then you get into a dispute that a court really needs to kind of dig into and look, and that kind of goes to the merits. But, I mean, you don't even... If you don't even say it, right, you don't even allege, right, there was testing that was inconclusive, identity was an issue in my case. And it's not properly filed. And it's not properly filed. It says 770.16. It says new trial. It has the caption on it. And the fact that he was able to put that in the hand of a clerk somehow, I mean, it took the judge a week to reject it. It was lightning fast and didn't require a response from the prosecutor. It was, I think, three pages, I believe. Lots of times courts decide things on the merits in the space of a week. I'm not sure. Maybe that's true. Okay. Maybe that's true. I don't know. I feel like that's lightning fast for something to be really decided on the merits. But I would also look at the language. In the state trial court's order, it really is just about that he hasn't even bothered to allege these things. He doesn't even go into the facts. He also never denies a motion for new trial. There's no denial of a motion for new trial in that order. It's only the motion. Now, that goes more to the other issue of whether a 770.16 motion is a collateral attack, as opposed to the properly filed thing. But I think it's worth it. Yeah, if you could address the collateral attack in the minute or two you have. Yeah. No, I have two seconds, but I'll just do the best I can if you'll indulge me. I mean, we've got it in the brief. Basically, it is a multi-step process. You cannot allege in a 770.16 motion that you are entitled to a new trial because the whole point of the motion is to get the information to figure out if you might be entitled to a new trial. So no defendant who files a 770.16 motion can even allege that. The whole point is that they need the information. It's a discovery motion. The fact that it has the words new trial in it I think is really sort of kind of a magic words or a form over function thing. It's a multi-step. It's a discovery motion. And I think that the sort of sister circuit cases are distinguishable. I think Ramos is not helpful because I would point the court to Holloway and Texas law says that their statute is not a collateral review. And the fact that Ramos in an unpublished, very short opinion with no analysis says, well, we have to follow our published precedent, I don't think that's very persuasive. I would say if this court is persuaded by Hudson, I think I've got a hard road on this issue. But I think Hudson is not persuasive in light of Texas law and Texas' own interpretations of its own statutes. And I don't think Ramos has much to say there. Thank you. I'm well over time, and I appreciate Your Honor's time. Thank you. Thank you. Request affirmation. Your Honors, if I may, I would like to go through the three points. The points my opponent has raised on each of the three questions, proper filing is the quickest. He says we didn't allege various things. We had to allege them. The trial court says we didn't allege them, and that's the end of it. What he didn't give is any authority for that. There are two circuits that have considered the question of whether a pleading requirement is a proper filing condition. They both say no. Those two circuits are the 11th in Brown and the 9th in Curiel. In both of those cases, this court's sister circuits said that facial invalidity is not determinative of proper filing. That's the language from Brown. And that failure to satisfy a pleading requirement is not determinative of proper filing. I'm paraphrasing Curiel. We think that those two cases are correct for the reasons that they give, and Respondent has offered no contrary authority or any argument for why the court should depart from its sister circuits. Turning to collateral review, he claims that it's multistage and that no defendant can allege they're entitled to a new trial. Mr. Karas did allege that he was entitled to a new trial. Respondent calls that magic words. We call it a necessary element of an MCL 770-16 petition. The statute is clear that it's one petition. The language says a petition, the petition. It talks about having a hearing on the petition where you decide whether or not to grant a new trial based on what the DNA evidence returned. We think that the language of the statute is unambiguous, that a single petition asks for both DNA testing and a new trial. So your opponent calls it simply a discovery tool. So two points, Your Honor. First, we think he's wrong about that. It proceeds in phases. So at the beginning you allege, I'm entitled to DNA testing, which will show that I'm entitled to a new trial. Whether or not you can make out the factual predicate for what you allege in your pleading, the fact that that has to proceed in stages doesn't distinguish it from any other civil litigation. You make a claim, you have discovery, you find out whether the claim can come up to proof, and if it can, you're entitled to the relief that you asked for in your pleading. We think that's totally unremarkable. Similarly, the multi-stage question, there are multiple stages here. There's an inquiry into whether you're entitled to DNA testing, not, as the respondent presented in its brief, an inquiry into whether you've satisfied the filing conditions. And then if the DNA testing exonerates you, then they move on to consider a new trial. That's not unlike, as we claim in our brief, petitioning for certiorari, and if the court says we'll consider the issue, then you then brief the merits. And then I see I'm running out of time, so if I could just turn to the COA question. We've done everything we can to get a COA. The respondent said it wouldn't be appropriate to grant it. He didn't explain why that is other than that it lacks merit. We think the merits are debatable and that's all that's required for the COA. We think it's perfectly appropriate. And then finally, he says that it's equally clear that the procedural default here occurred. For all the reasons that we state in our brief, we think that's wrong. And then finally, he says the counsel was reasonable because Lockbridge hadn't yet been decided and there's this strong presumption. He's just trying to relitigate Chase. The court considered exactly those arguments in Chase and in Robinson and said Elaine clearly established the law when it was decided. I see my time has elapsed, so unless there are any further questions, we'd ask that you reverse the decision below and grant a writ of habeas corpus conditional on resentencing. Thank you both for your argument, and the case will be submitted.